UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEREMY PHILLIP SALING,  ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:22-cv-00392 SRC |
| ) | |
| STEVEN PELTON, et al., ) | |
| ) | |
| Defendants. ) | |

**Memorandum and Order**

This matter is before the Court on the motion of self-represented plaintiff Jeremy Phillip Saling, an inmate at Ozark Correctional Center, for leave to commence this civil action without prepayment of the required filing fee. Doc. 2. Having reviewed the motion and the financial information submitted in support, the Court has determined plaintiff lacks sufficient funds to pay the entire filing fee and assesses an initial partial filing fee of $1.00. *See* 28 U.S.C. § 1915(b)(1).

Having carefully reviewed plaintiff's complaint, pursuant to 28 U.S.C. § 1915(e)(2), the Court dismisses plaintiff's official-capacity claims and the majority of plaintiff's state-law claims, except for plaintiff's assault-and-battery claims against defendant Hunter Barnes. The Court additionally dismisses plaintiff's claims against defendants Steven Pelton, Scott Duck, Michael Delatorre, Kahild Ashkar, Tiara Byrd, Todd Sinclair, James Cross and Franklin County Sheriff's Department. The Court does, however, direct the Clerk of Court to issue process on plaintiff's individual-capacity excessive-force and state-law assault-and-battery claims against defendant Hunter Barnes.

**I.     28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a *certified* prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

## II.     Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense.  *Id*. at 679.  The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

The Court must liberally construe complaints filed by laypeople.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  This means that "if the essence of an allegation is discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).  Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914–15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel, *see McNeil v. United States*, 508 U.S. 106, 113 (1993).

**III.    The Complaint**

On April 4, 2022, plaintiff Jeremy Phillip Saling filed his complaint on Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983.  Doc. 1.  At the time plaintiff filed his complaint he was incarcerated at Franklin County Detention Center in Union, Missouri. Plaintiff filed a change of address form in this action on June 3, 2022, indicating that he was transferred to Ozark Correctional Center in Fordland, Missouri.  Doc. 6.  All relevant issues in plaintiff's complaint took place at Franklin County Detention Center.

Plaintiff names the following as defendants in this action:  Franklin County Sheriff Steven Pelton; Captain Scott Duck; Lieutenant Michael Delatorre; Sergeant Kahild Ashkar;

Corporal Hunter Barnes; Deputy Tiara Byrd; Deputy Todd Sinclair; and Deputy James Cross. Also named as a defendant in the body of the complaint is the Franklin County Sheriff's Department. Defendants are sued in their individual and official capacities. It is not entirely clear whether plaintiff has intended to sue Deputies James Cross and Todd Sinclair in both their individual and official capacities, as there were mark-outs on the face of the complaint. The Court assumes plaintiff meant to sue defendants in both capacities just as he did with rest of the defendants.

Plaintiff alleges that on February 2, 2022, he heard several inmates talking about clogging their toilets and flooding the wing because they were upset about being "locked down" due to the COVID-19 pandemic. When Deputy Tiara Byrd came to collect lunch trays, plaintiff notified her that several inmates were discussing flooding the wing. He claims he told her that perhaps it "could be prevented." Plaintiff claims that Deputy Byrd left the wing and came back with Sergeant Kahlid Ashkar, who already had his taser out when he approached plaintiff's cell door. Plaintiff states that Sergeant Ashkar started yelling at him immediately upon seeing him. Sergeant Ashkar told plaintiff that he should "take it up with the doctor" if he didn't like being locked down." And he allegedly would not listen when plaintiff attempted to tell him he was "only trying to help." When plaintiff and Sergeant Ashkar got into a verbal altercation, Sergeant Ashkar entered plaintiff's cell, pushed him back from the cell door and told him to "cuff up."

Plaintiff asserts that Deputy Byrd grabbed one of plaintiff's hands and Sergeant Ashkar grabbed the other hand, while "attempting to use very painful wrist locks" to submit to restraints. Plaintiff admits that rather than submit to restraints he "crossed his arms," and he told the deputies that he hadn't done anything wrong. As a result of the yelling within plaintiff's cell, Deputy James Cross came to assist. He told plaintiff, "Saling, it's not worth it. Just cuff up."

Plaintiff claims that at this point, he finally put his hands behind his back to submit to restraints, and he was escorted by Sergeant Ashkar and Deputy Byrd to padded cell #3.

In padded cell #3, Sergeant Ashkar instructed plaintiff to get on his knees in the back of the cell, with his hands handcuffed behind his back.  Although plaintiff complied with the directive, he verbally responded, "Fu*k you, you're a fu*king bully who doesn't do sh*t but abuse his authority."  Plaintiff alleges that he was "yanked to his feet and began getting thrown around the room."  Plaintiff does not indicate who threw him; however, he claims he was struck in the face and "slammed into something."  Again, plaintiff fails to articulate which defendant struck him in the face.  Nonetheless, he states that he suffered "multiple lacerations" on his face, a black eye, and damage to his eyeball.

Plaintiff alleges that at some point he lost consciousness, and when he awoke, he was laying face down on the ground, restrained by several unnamed officers, while another officer was placing leg restraints on him.  He states that defendant Corporal Barnes pushed his head forcefully into the cell floor with his left hand, while using his right hand to jam his thumb into a pressure point under plaintiff's jaw.  Plaintiff claims that Corporal Barnes applied more pressure at a different angle when plaintiff "screamed in pain" and called Barnes a "b*tch."

Plaintiff was left in padded cell #3 fully restrained in hand and leg cuffs.  He states that he began angrily yelling out the cell door at Sergeant Ashkar, to which Sergeant Ashkar responded, "Saling, nobody cares about what you've got to say!  You're nothing but a fu*king snitch who tells on people to try to get out of trouble!"  Plaintiff alleges that all of the inmates in booking and in the holding cells were able to hear Sergeant Ashkar's pronouncement that plaintiff was a snitch.  He claims that Deputy Todd Sinclair drafted a report relating to this incident, but a "someone of higher rank" accessed the report and made changes to it "in an attempt to cover up their guilt and misdeeds."  Plaintiff claims that Deputy Sinclair was able to

catch this "attempted spoliation of evidence," and that Sinclair changed the report to reflect his prior statements.

At some later point in the day, plaintiff states that Sergeant Ashkar and Corporal Barnes returned to padded cell #3 and removed his handcuffs and leg restraints. He claims that defendants Ashkar and Barnes attempted to convince him that the proceedings were "all his fault." Plaintiff states that he asked to see the nurse, and he was told "no" by Sergeant Ashkar even though his face was bleeding.

After Sergeant Ashkar and Corporal Barnes left the cell, plaintiff got the attention of Lieutenant Delatorre as he was walking by plaintiff's cell. He asked Lieutenant Delatorre if he could see the nurse, and Delatorre purportedly escorted plaintiff to the nurse's station, where plaintiff claims he was treated for "multiple lacerations" on his face. After being tended to by the nurse, plaintiff was placed back in his original cell. Plaintiff states that he requested that photos be taken of the "lacerations" on his face, but it wasn't until a week later that photos were taken by Deputy Kaune. Plaintiff states that because his request for photo documentation of his face was refused, he had to have his family take screenshots of his face using the video visitation kiosk. Plaintiff submitted what appears to be those screenshots to the Court separately. *See* Doc. 7. The Court considers the screenshots as an exhibit to his pleading. *See* Fed. R. Civ. P. 10(c).

Plaintiff alleges that later in the evening of February 2, 2022, Sergeant Ashkar came to his cell with an injury report and told him to "sign this." Plaintiff saw that the report said that he had "sustained minor scratches" from falling. Before signing the injury report, plaintiff modified the report to indicate he was the "victim of an excessive use of force."

Plaintiff alleges ten (10) counts in this action against the nine (9) named defendants. He brings claims for: (1) failure to train/supervise/discipline against Sheriff Steven Pelton, Captain Scott Duck, Lieutenant Michael Delatorre, Sergeant Kahlid Ashkar, and Corporal Hunter Barnes;

6

(2) failure to intervene against Sheriff Steven Pelton, Captain Scott Duck, Lieutenant Michael Delatorre, Sergeant Kahlid Ashkar, Corporal Hunter Barnes, Deputy Tiara Byrd, Deputy James Cross, and Deputy Todd Sinclair; (3) excessive force against Sergeant Kahlid Ashkar, Corporal Hunter Barnes, and Deputy Tiara Byrd; (4) willful misconduct/professional misconduct for exposing plaintiff as an informant against Sergeant Kahlid Ashkar; (5) intentional infliction of emotional distress against Sergeant Kahlid Ashkar, Corporal Hunter Barnes, and Deputy Tiara Byrd; (6) spoliation/tampering with evidence against Sergeant Kahlid Ashkar; (7) assault and battery against Sergeant Kahlid Ashkar, Corporal Hunter Barnes, and Deputy Tiara Byrd; (8) civil conspiracy against Sheriff Steve Steven Pelton, Captain Scott Duck, Lieutenant Michael Delatorre, Sergeant Kahlid Ashkar, Corporal Hunter Barnes, and Deputy Tiara Byrd; (9) municipal liability against the Franklin County Sheriff's Department; and (10) gross negligence against Sergeant Kahlid Ashkar for exposing plaintiff as an informant.  Plaintiff seeks compensatory damages.

**IV.**     **Discussion**

Plaintiff brings claims against defendants under both 42 U.S.C. § 1983, as well as under Missouri State law.  The Court first addresses plaintiff's claims under § 1983.  As explained below, the Court finds that plaintiff's claims under § 1983 are subject to dismissal except for plaintiff's claims for excessive force against defendant Barnes in his individual capacity.  The Court will issue process or cause process to issue on this claim.

**A.**     **The Franklin County Sheriff's Department**

Plaintiff has named the Franklin County Sheriff's Department as a defendant in the body of his complaint.  However, a sheriff's department is not a suable entity.  *See De La Garza v. Kandiyohi Cty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities); *see*

*also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("[C]ounty jails are not legal entities amenable to suit."); *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"). According to the Eighth Circuit, "pro se status does not excuse [a plaintiff's] failure to name the proper parties." *Jackson v. Mo. Bd. of Prob. & Parole*, 306 F. App'x 333, 333 (8th Cir. 2009). As the Franklin County Sheriff's Department is not a distinctly suable entity, the claim against it must be dismissed.

      B.      **Official-capacity claims**

In an official-capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official-capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Thus, to prevail on an official-capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

Plaintiff has not articulated his official-capacity claims against defendants in a cohesive manner. He states that he is bringing a "municipal liability" claim against Franklin County Sheriff's Department, and he states in a conclusory statement that defendants Pelton, Duck, Delatorre and Barnes failed to train, supervise and discipline "ongoing misconduct by Sgt.

8

Ashkar and his staff even after numerous grievance[s] of excessive force and malicious abuse of authority in past years." Plaintiff also includes Sergeant Kahlid Ashkar in his allegations of "failure to train, supervise and discipline." However, he does not indicate how defendant Ashkar could have failed to train, supervise and/or discipline himself and "his staff."

As discussed above, a suit against Franklin County Sheriff's Department fails because sheriff's departments are not suable entities. And plaintiff alleges that all of the defendants in this lawsuit are employees of the Franklin County Sheriff's Department. As such, the official capacity claims against these defendants are claims against the Sheriff Department itself. Thus, his official-capacity claims against these defendants are subject to dismissal.

Even if Franklin County was substituted as the proper party defendant, plaintiff has failed to state a claim against it. A local governing body can be sued directly under § 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), and liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise," *Mick v. Raines*, 883 F.3d 1075, 1080 (8th Cir. 2018); *see also Marsh v. Phelps County*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Plaintiff has not alleged that Franklin County has an unconstitutional policy or custom that makes it liable for the alleged violations of his constitutional rights. Indeed, there is no mention whatsoever of any policy or custom in plaintiff's allegations, and there are no allegations regarding a pattern of similar constitutional violations by other Franklin County employees. Plaintiff's complaint strictly addresses his own experience concerning the purported excessive force which allegedly occurred on February 2, 2022. Although plaintiff seems to allude to the fact that defendant Ashkar had prior assertions of excessive force against him, he

9

has not provided facts relating to such occurrences within the body of his complaint. Additionally, and most importantly, plaintiff has failed to allege that any of the defendants knew about defendant Ashkar's prior conduct and failed to train, supervise or discipline defendant Ashkar relating to the conduct. *See Mick*, 883 F.3d at 1080. Therefore, plaintiff's official capacity claims against defendants must be dismissed. *See Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

    **C.**    **Individual-capacity claims**

        **1.**    **Excessive-force claims**

Plaintiff alleges excessive-force claims under the Fourteenth Amendment against defendants Ashkar, Barnes and Byrd. To summarize plaintiff's allegations, he claims that defendant Ashkar entered his cell and pushed him back from the cell door and told him to "cuff up," after which both Ashkar and Byrd grabbed each of plaintiff's hands to submit to restraints. Plaintiff admits that rather than submit to restraints he crossed his arms. When he got to padded cell #3, defendant Ashkar instructed plaintiff to get on his knees in the back of the cell, with his hands handcuffed behind his back. Although plaintiff complied with the directive, he verbally responded, "Fu*k you, you're a fu*king bully who doesn't do sh*t but abuse his authority." Plaintiff alleges that he was "yanked to his feet and began getting thrown around the room; however, there is no indication in the complaint as to which defendant allegedly threw plaintiff. Plaintiff also complains that his face struck something at this point, but again, he fails to allege who or what struck him.

Plaintiff alleges that at some point he lost consciousness, and when he awoke, he was lying face down on the ground, restrained by several unnamed officers, while another officer was

placing leg restraints on him.  He states that defendant Corporal Barnes pushed his head forcefully into the cell floor with his left hand, while using his right hand to jam his thumb into a pressure point under plaintiff's jaw.  Plaintiff claims that Corporal Barnes applied more pressure at a different angle when plaintiff "screamed in pain" and called Barnes a "b*tch."

The Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); *Smith v. Conway County*, 759 F.3d 853, 858 (8th Cir. 2014) ("[T]he Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not." (citation omitted)).  Analysis of excessive-force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014).  The Fourteenth Amendment gives pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014).  Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished.  *Id*.

"Whether the application of force is unreasonable turns on the facts and circumstances of each particular case." *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (internal quotations and citations omitted).  "Factors relevant to assessing the objective reasonableness of force used by officers include:  the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived

11

by the officer; and whether the plaintiff was actively resisting." *Id*. (citing *Kingsley*, 576 U.S. at 397–98).

Regarding the actions of defendants Ashkar and Byrd in telling plaintiff to cuff up and walking him into padded cell #3, plaintiff has not alleged enough evidence that the force used by these defendants in maneuvering defendant was unreasonable. Plaintiff admits that he was verbally hostile to defendants in cuffing up, and he admits that he had to be told by Deputy James Cross to please cuff up when plaintiff was actively resisting defendants Ashkar and Byrd. Thus, the Court cannot say that Ashkar and Byrd acted unreasonably by "pushing" plaintiff to the back of the cell to have him cuff up, or by grabbing plaintiff's hands to get him to submit to restraints.

Although plaintiff describes an instance in padded cell #3 where *someone* yanked him to his feet, threw him around the room and struck him in the face, he has not identified the defendant who did so. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Plaintiff's failure to identify the defendant responsible for the alleged unlawful actions is fatal to his claim for relief in this instance.

As for plaintiff's assertions that defendant Barnes acted with excessive force by pushing his head forcefully into the cell floor with his left hand, while using his right hand to jam his thumb into a pressure point under plaintiff's jaw, the Court must review all facts and circumstances when reviewing such a claim. Plaintiff specifically states that at the time he was laying face down on the ground, in leg restraints, with several officers on his back and legs at the time. He also claims that he was not struggling when defendant Barnes pushed his head down and jammed his thumb into the pressure point. Taking plaintiff's allegations as true, as the Court must at this stage of the litigation, the Court has determined that plaintiff's excessive force claim

against defendant Barnes is sufficient for purposes of initial review. As such, the Court will direct the Clerk of Court to issue process on defendant Barnes in his individual capacity as to plaintiff's excessive force claim.

### 2. Failure-to-intervene claims

Plaintiff asserts that defendants Pelton, Duck, Delatorre, Cross and Sinclair should be held liable for failing to intervene in the excessive force perpetrated by defendants Byrd, Ashkar and Barnes. Plaintiff names defendants Byrd, Barnes and Ashkar in both his failure-to-intervene claims and his excessive-force claims.

"A jail official violates the Due Process Clause . . . when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013). Deliberate indifference requires a detainee to make two showings. *Id*. First, objectively, the detainee must demonstrate that he faced a serious risk of harm. *Id*. Second, he must subjectively establish that the jail "official knew of and disregarded the risk to the inmate's safety." *Id*. Under the deliberate-indifference standard, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Edwards*, 750 F.3d at 733 (determining that district court correctly denied guards qualified immunity after finding "that the guards were aware that excessive force was being used against the plaintiffs but did not intervene to protect them"); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer . . . was using excessive force and otherwise was unlawfully punishing the prisoner").

The Court has reviewed plaintiff's complaint at length and there is no indication that defendants Duck, Pelton, Delatorre or Sinclair were present during the instances of excessive force as outlined by plaintiff. Moreover, although plaintiff states that defendant Cross did appear

briefly in his cell when defendant Byrd and Ashkar told him to first cuff up, the Court has already found that this instance did not qualify as excessive force. As such, defendant Cross cannot be liable for failing to intervene pursuant to § 1983.

### 3. Conspiracy claim under 42 U.S.C. § 1983

Plaintiff alleges that defendants Pelton, Duck, Delatorre, Ashkar, Barnes and Byrd engaged in a civil conspiracy to "cover up violations of his constitutional rights" by waiting over a week to take pictures of his injuries and ignoring his grievances. To allege a conspiracy, a plaintiff must allege, among other things, a meeting of the minds among the conspirators "sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798–99 (8th Cir. 2013). Plaintiff provides no factual allegations regarding any meeting of the minds or agreement between the defendants on February 2, 2022.

Plaintiff's bare assertion—that there must have been a conspiracy to violate his rights because it was almost a week later that pictures were taken of his face—is insufficient to state a claim for a conspiracy in this instance. *See Iqbal*, 556 U.S. at 678 (to state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements"). Plaintiff acknowledges that he was taken to see a nurse and had his injuries documented by defendant Delatorre on the same day he was injured. Additionally, plaintiff was able to have someone take pictures of his face via a video phone call, as evidenced by the images he has submitted to the Court.

Further, plaintiff cannot assert that defendants' failure to respond to his grievances about the incident is evidence of a global conspiracy. To state a cognizable claim under § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42

14

U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996).  There is no federal constitutional right to a grievance procedure, and neither a state law nor a state policy creates one.  *See Poe v. Corizon Health*, 2019 WL 186660, at *4 (E.D. Mo. Jan. 14, 2019). Therefore, if a state entity, such as the Franklin County Detention Center, elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim.  *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (the grievance procedure is a procedural right only and confers no substantive right on an inmate); *Ingrassia v. Schafer*, 2012 WL 761143, at *7 (E.D. Mo. Mar. 8, 2012) ("[R]uling against a [detainee] on an administrative complaint does not cause or contribute to the violation." (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)); *see also Reynolds v. Lombardi*, No. 13-CV-156, 2013 WL 6134018, at *2 (E.D. Mo. Nov. 21, 2013) (claim that officials failed to respond to letters is legally frivolous).

To the extent plaintiff can be understood to claim that defendants violated the Detention Center's regulations, or state regulations, by not providing him with a copy of written institutional polices, such a claim also fails because there is no federally protected interest in having state officers follow state law or prison officials follow prison regulations.  *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *see also Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability); *Bagley v. Rogerson*, 5 F.3d 325 (8th Cir. 1993) (allegation of state law violation—whether statutory or decisional—does not, in itself, state a claim under the U.S. Constitution or § 1983).

In light of the aforementioned, plaintiff's claims for conspiracy against these defendants are subject to dismissal.

        D.     **Missouri state-law claims**

In addition to the claims brought pursuant to 42 U.S.C. § 1983, plaintiff also brings claims against defendants under Missouri law.  After reviewing those claims the Court finds that

plaintiff's claims brought under Missouri law are subject to dismissal, except for plaintiff's claims for assault and battery against defendant Barnes.

### 1.     Assault-and-battery claims

Like plaintiff's allegations of excessive force under 42 U.S.C. § 1983, plaintiff also alleges state-law claims of assault and battery against defendants Ashkar, Barnes and Byrd. To allege a cause of action for battery under Missouri law, the plaintiff must plead an intended, offensive bodily contact. *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 334 (Mo. 2011). "To plead an assault, the [plaintiff] must allege:  (1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Id.* at 335 (quotation omitted). Based on the same analysis as set forth above, and at this juncture of the case, the Court will issue process on defendant Barnes on plaintiff's assault-and-battery claims.

### 2.     Intentional-infliction-of-emotional-distress claim

Plaintiff claims that he is suing defendants Ashkar, Barnes and Byrd for intentional infliction of emotional distress under Missouri State law. He claims that "the actions of these officers left [him] in with emotional scars and mental issues causing [him] to be in constant fear for [his] life and being woke by nightmares every night."

The necessary elements for a claim for intentional infliction of emotional distress are: "(1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme or outrageous; and (3) the conduct must be the cause (4) of extreme emotional distress." *Thomas v. Special Olympics Mo., Inc.*, 31 S.W.3d 442, 446 (Mo. Ct. App. 2000). The mental injury must be medically diagnosable and significant. *Fetick v. Am. Cyanamid Co.*, 38 S.W.3d 415, 419 (Mo. 2001). Plaintiff has not alleged that he experienced medically diagnosable

emotional distress as a result of defendants' actions.  As such, plaintiff's claims for intentional infliction of emotional distress are subject to dismissal.

### 3. Willful misconduct/professional misconduct

Plaintiff alleges that he is suing defendant Ashkar for "willful misconduct/professional misconduct" for exposing plaintiff as an informant.  He does not indicate, however, the alleged Missouri state law that corresponds with his allegations.  To the extent plaintiff is attempting to hold defendant Ashkar criminally or civilly liable under a professional licensure, he may not do so.  *See Ray v. U.S. Dep't of Just.*, 508 F. Supp. 724, 725 (E.D. Mo.), *aff'd*, 658 F.2d 608 (8th Cir. 1981) ("It is well settled that initiation of federal criminal prosecution is a discretionary decision within the Executive Branch not subject to judicial compulsion." (citations omitted)).

Further, it is axiomatic that plaintiff, as a private citizen, does not have a constitutional right or any other basis to compel a criminal investigation or have another person prosecuted for a crime.  *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").  Therefore, to the extent the complaint requests that a criminal investigation and/or prosecution be initiated against the defendant Ashkar, the Court declines to do so.

### 4. Spoliation of evidence

Plaintiff asserts that defendant Ashkar should be held liable for unlawful spoliation/tampering with evidence.  Spoliation of evidence, however, is not an independent cause of action within Missouri–instead, the doctrine provides the trial court may grant an adverse evidentiary inference in favor of the opposing party as a remedy for missing evidence that would have been unfavorable to its position.  *See Baldridge v. Director of Revenue*, 82

S.W.3d 212, 223 (Mo. Ct. App. 2002); *Garrett v. Terminal R. Ass'n of St. Louis*, 259 S.W.2d 807, 812 (Mo. 1953); *Schneider v. G. Guilliams, Inc.*, 976 S.W.2d 522, 526 (Mo. Ct. App. 1998). "The adverse inference, however, does not prove the opposing party's case. Instead, the spoliator is left to determine whether any remaining evidence exists to support his or her claim in the face of the inference." *Schneider*, 976 S.W.2d at 526.

In this case, plaintiff states that defendant Sinclair was able to catch the "attempted spoliation of evidence," and he changed the report to reflect his prior statements. Accordingly, plaintiff admits that there was no "missing evidence" or spoliation of evidence. His claim for spoliation is therefore subject to dismissal.

     **5.**     **Negligence**

Plaintiff asserts that defendant Ashkar is liable for "gross negligence" for exposing plaintiff as an informant. He does not, however, indicate that he has been harmed because of being exposed as an alleged informant at the Franklin County Detention Center.

In Missouri, a prima facie negligence claim requires a plaintiff to establish the following elements: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff's injury. *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018). Because plaintiff has not alleged that he was harmed by defendant Ashkar's alleged exposure of him as an informant, his claim for negligence is subject to dismissal.

     **E.**     **Motion for appointment of counsel**

In civil cases, a self-represented litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may

appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the self-represented litigant to investigate the facts, the existence of conflicting testimony, and the ability of the self-represented litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After considering these factors, the Court finds the appointment of counsel is not warranted at this time. The instant Memorandum and Order grants plaintiff's motion to proceed in forma pauperis and directs the Clerk of Court to issue process or cause process to issue on the complaint only as to defendant Hunter Barnes. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be unduly complex. Thus, the Court will deny plaintiff's motion for appointment of counsel but will entertain future motions for appointment of counsel as the case progresses.

**V.     Conclusion**

Accordingly, the Court grants plaintiff's [2] Motion to Proceed In Forma Pauperis. The Court orders plaintiff to pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. The Court instructs plaintiff to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding. The Court denies without prejudice plaintiff's [4] Motion for Appointment of Counsel.

The Court dismisses without prejudice plaintiff's claims against defendants Steven Pelton, Scott Duck, Michael Delatorre, Kahild Ashkar, Tiara Byrd, Todd Sinclair, James Cross and Franklin County Sheriff's Department. *See* 28 U.S.C. § 1915(e)(2)(B). The Court also dismisses without prejudice plaintiff's official-capacity, intentional-infliction-of-emotional-distress, and civil-conspiracy claims against defendant Hunter Barnes. *See* 28 U.S.C. § 1915(e)(2)(B).

The Court directs the Clerk of Court to issue process or cause process to issue on defendant Hunter Barnes in his individual capacity as to plaintiff's claims for excessive force in violation of the Fourteenth Amendment, and for assault and battery in violation of Missouri State law. Barnes shall be served by summons at the United States Marshals at the Franklin County Sheriff's Office, #1 Bruns Drive, Union, Missouri, 63084. A separate Order of Partial Dismissal accompanies this Memorandum and Order.

Dated this 3rd day of February 2023.

*[signature]*

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE