UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY PHILLIP SALING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00392-SRC |
| | ) | |
| HUNTER BARNES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### Memorandum and Order

This matter is before the Court on self-represented Plaintiff Jeremy Saling's motion for appointment of counsel and motion for reconsideration of the Memorandum and Order and Order of Partial Dismissal entered on February 3, 2023. Doc. 14. On February 3, 2023, the Court granted Saling's motion to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 and reviewed Saling's complaint for frivolousness, maliciousness, and failure to state a claim. On March 20, 2023, the Court received Saling's "motion for reconsideration" regarding the partial dismissal of a multitude of Saling's claims and of seven defendants. Doc. 14. For the reasons discussed below, the Court in part grants and denies the motion for reconsideration. The Court also grants Saling's motion for appointment of counsel. Doc. 19.

**I.     Background**

Saling was a pretrial detainee at the time of the filing of the complaint on April 4, 2022. Doc. 1. He filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights during his incarceration at Franklin County Detention Center. He named the following individuals and entities as defendants in this action: Franklin County Sheriff Steven Pelton; Captain Scott Duck; Lieutenant Michael Delatorre; Sergeant Kahild Ashkar; Corporal Hunter

Barnes; Deputy Tiara Byrd; Deputy Todd Sinclair; Deputy James Cross; and the Franklin County Sheriff's Department. Saling's allegations related to events that occurred at the Franklin County Jail on February 2, 2022. He claimed that he had been subjected to excessive force and assault-and-battery by Defendants Ashkar, Byrd and Barnes. Saling further alleged that Defendants Pelton, Duck, Delatorre, Cross and Sinclair had failed to intervene in the alleged excessive-force incidents and had acted in a civil conspiracy with Ashkar, Byrd and Barnes. He also asserted that Defendants Pelton, Duck and Delatorre had failed to train and supervise Defendants Ashkar, Byrd and Barnes, and that the Franklin County Sheriff's Department should be held liable for "municipal liability." Last, Saling alleged several state-law grounds for relief, including: willful/professional misconduct; intentional infliction of emotional distress; spoliation/tampering; municipal liability; and gross negligence. Doc. 1.

In its review under 28 U.S.C. § 1915, the Court found that all of Saling's claims were subject to dismissal except for his individual-capacity claims against Barnes. Doc. 8. The Court issued process on those claims. *Id.* Summons was returned unexecuted on March 13, 2023, as Hunter Barnes no longer works for Franklin County. Doc. 11. On March 15, 2023, pursuant to Federal Rule of Civil Procedure 4(m), the Court issued an Order requiring Saling to provide an address at which Hunter Barnes could be served, by no later than April 14, 2023. Doc. 13. Saling has yet to provide an address for Barnes.

## II.     Motion for Reconsideration

In his motion for reconsideration, Saling posits a new legal theory of excessive force against Kahild Ashkar and Hunter Barnes, as well as a new failure-to-intervene claim against Tiara Byrd. He claims that he would like to "clarify" who purportedly "threw him around" while

2

he was in padded cell #3 on February 2, 2022, even though he admits that he had his eyes closed during the altercation. *Id.*

In his original complaint, Saling did not indicate who threw him around the room, purportedly struck him in the face and damaged his eye during the altercation in padded cell #3. Nevertheless, in his motion for reconsideration, Saling claims that he would like to "clarify" that:

> Sgt. Ashkar was the person who actually initiated the incident by yanking the plaintiff to his feet by forcefully pulling up on the handcuffs that were securing plaintiff's hands behind his back. He then assisted Cpl. Hunter Barnes in throwing plaintiff around the cell face first and smashing his face into objects or persons (that plaintiff must defer to video evidence to identify due to his eyes being closed tightly in fear of injury to his eyes and pain) causing not only wanton and malicious pain to plaintiff but also injuries that are documented by medical.
> . . .
> Deputy Tiara Byrd was in the room along with Sgt. Ashkar and Cpl. Hunter Barnes when the incident occurred and did nothing to stop the assault or the blatant violation of my 14th Amendment rights under the due process clause.

Doc. 14 at pp. 3–5.

In addition to these new claims, Saling also attempts to add "evidence" to his complaint regarding a purported failure to train, supervise, and discipline. He also attempts to add a negligence claim against Ashkar. He asserts that he was "assaulted twice after this" incident by other inmates who heard Ashkar label him a snitch. *Id*. at p. 4. Additionally, he alleges that other correctional officers at the Franklin County Detention Center told him that Ashkar has a history of anger problems, that Ashkar has tended to blow up on staff members and other inmates, and that correctional officers have had to intervene to keep Ashkar from violating other inmates' rights. *Id.* at p. 6.

Last, Saling has attached to his motion for reconsideration a letter from Captain David Boehm at Franklin County Detention Center reviewing the incident on February 2, 2022, in padded cell #3. *Id*. at p. 8. Captain Boehm states in his letter:

3

> In reviewing your complaint I solicited the help of a certified defense tactics/use of force instructor. This instructor reviewed the reports and video of your complaint. It was found that there were opportunities for review of tactics and training; however, there was no excessive use of force indicated in the situation you were involved in.

Doc. 14, p. 8. Saling requests that the letter be submitted into evidence to show that the staff's training was inadequate at Franklin County Detention Center.

### III.   Discussion

####   A.   Motion for reconsideration

It is unclear whether Saling intends to bring his pro-se motion for reconsideration under Rule 59(e) (motion to alter or amend the judgment) or Rule 60(b) (relief from a judgment or order for mistake or other reason). Fed. R. Civ. P. 59(e), 60(b); s*ee also Sanders v. Clemco Indus.*, 862 F.2d 161, 164-65, 168–69 (8th Cir. 1988) (discussing differences in characterizing unlabeled motion for reconsideration as either under Rule 59(e) or Rule 60(b)). However, as the Court only partially dismissed Saling's claims, and the dismissal was without prejudice, the Court construes Saling's motion as a Rule 60(b) motion for relief from a non-final order. *See Elder–Keep v. Aksamit,* 460 F.3d 979, 984 (8th Cir. 2006) ("[M]otions for reconsideration are 'nothing more than Rule 60(b) motions when directed at non-final orders.'" (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 525 (8th Cir. 2003)).

>
> Federal Rule of Civil Procedure 60(b) provides:
>
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

>    (4) the judgment is void;
>
>    (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>    (6) any other reason that justifies relief.

"Rule 60(b) provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances." *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 815 (8th Cir. 2003) (quoted case omitted). "It is not a vehicle for simple reargument on the merits." *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999).

"A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111–12 (8th Cir. 2019) (quoting *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015)). "Nor may a motion for reconsideration serve to introduce evidence that the movant could have produced before the district court decided the prior motion." *Id*. (citing *Julianello*, 791 F.3d at 922); *see also Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (stating that motions for reconsideration cannot be used to introduce new evidence or legal theories that "could have been adduced during pendency of the [relevant] motion" (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987))).

Here, with one exception the Court addresses below, Saling's motion for reconsideration fails to satisfy Rule 60(b)'s requirements. Saling first attempts to "clarify" that "Sgt. Ashkar was the person who actually initiated the incident" that resulted in Saling being thrown around the cell, resulting in injuries to his face. Doc. 14 at p. 2. He also states that Ashkar "assisted Cpl. Hunter Barnes in throwing Saling around the cell . . . ." *Id.* Saling also attempts to clarify

5

Deputy Tiara Byrd's involvement, explaining that she "was in the room" with Ashkar and Barnes when the incident occurred, and failed to intervene. *Id.* at p. 3. Saling also refers to several incidents that occurred after he filed his complaint. Id. at pp. 6–7.

Adding new facts and seeking to correct deficiencies in a complaint does not satisfy the requirements of Rule 60(b). Rather, if Saling wishes to amend or supplement his complaint, he may do so or seek to do so as appropriate under Rule 15 of the Federal Rules of Civil Procedure.

However, Saling identifies one part of the Court's prior Order that does warrant reconsideration. Acknowledging that his "original complaint . . . was unclear," Doc. 14 at p. 1, Saling argues that the factual allegations in his complaint regarding Ashkar's labeling him a "snitch" state a claim of deliberate indifference, *id.* at p. 14. The Court agrees.

Because Saling was a pretrial detainee at the time of the alleged incident, the Court analyzes his § 1983 claims under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment, though "[t]his makes little difference as a practical matter" because "[p]retrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) (citing *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)); *see also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014).

The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979). Further, in determining whether pretrial detention is unconstitutionally punitive, the Eighth Circuit has applied the deliberate-indifference standard. *See Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *see*

6

*also Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) ("To succeed on a claim under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee . . . must show the defendant official was deliberately indifferent to his rights."); *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013) ("A jail official violates the Due Process Clause . . . when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee.").

Prison officials must take "reasonable measures to guarantee the safety of the inmates." *Irving v. Dormire*, 519 F.3d 441, 450–51 (8th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 882 (1994)). In particular, "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 833). "They also have a duty to protect inmates from unreasonable conditions that pose 'a substantial risk of serious harm.'" *Id.* (quoting *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007)).

In *Irving v. Dormire*, the Eighth Circuit upheld the district court's denial of qualified immunity to a prison guard who labeled an inmate a "snitch," holding that—"given the clear weight of authority in the circuits that ha[d] ruled on the question"—"a reasonable prison guard in [the guard]'s position would have known that to label [the inmate] a snitch would violate his constitutional right to protection from harm." 519 F.3d at 451 (citing cases); *see also id.* ("[W]e have previously recognized that an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates . . . ." (citing *Reece v. Groose*, 60 F.3d 487, 588 (8th Cir. 1995)).

In *Williams v. Horner*, an inmate alleged, among other things, that a corrections officer "call[ed] [him] a snitch within the hearing of other inmates." 403 F. App'x 138, 139–40 (8th Cir. 2010). The inmate claimed that "calling [him] a snitch subjected him to a substantial risk of

7

harm by other inmates in violation of the Eighth Amendment." *Id.* at 140. The district court dismissed the claim at the § 1915A-review stage. The Eighth Circuit reversed, quoting *Irving* for the proposition that "to falsely label[] an inmate a snitch is to unreasonably subject that inmate to the threat of a substantial risk of serious harm at the hands of his fellow inmates," and concluding that "[s]uch allegations are therefore clearly sufficient to support an Eighth Amendment claim . . . at the pre-service analysis stage under 28 U.S.C. § 1915A." *Id.* (quoting *Irving*, 519 F.3d at 451).

As the Court previously recounted, Doc. 8 at p. 5, in his complaint Saling alleges that following an altercation with correctional officers, he began angrily yelling out through his cell door at Sergeant Ashkar. Doc. 1 at p. 10. He claims Ashkar responded: "Saling, nobody cares about what you've got to say! You're nothing but a fu*king snitch who tells on people to try to get out of trouble!" *Id.* Saling alleges that all of the inmates in booking and in the holding cells were able to hear Ashkar's pronouncement that Saling was a snitch. *Id.*

In his original complaint Saling only brought state-law negligence and "willful misconduct / professional misconduct" claims against Ashkar, *see* Doc. 1 at pp. 18, 20, which the Court dismissed without prejudice, Doc. 8 at pp. 17–18. However, as the Court previously stated, Doc. 8 at p. 3, the Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

The Court concludes that the facts in the complaint state a claim against Ashkar for deliberate indifference. *See Irving*, 519 F.3d at 451; *Glaze*, 721 F.3d at 531. Because the facts

8

alleged in a complaint, not the complaint's legal theories, are what matter, the Court grants Saling's motion for reconsideration in part, only as to the Court's dismissal without prejudice of Defendant Ashkar. *See* Doc. 1 at p. 10; Fed. R. Civ. P. 60(b)(1).

### B. Appointment of counsel

Saling has filed multiple motions for appointment of counsel in this case. Docs. 4, 12, 19. The Court denied Saling's first two motions for appointment of counsel without prejudice, but noted that the Court would "entertain future motions for appointment of counsel as the case progresses." Doc. 8 at p. 19; Doc. 13 at p. 3. Saling's third motion for appointment of counsel is pending. Doc. 19.

As the Court previously explained, Doc. 8 at pp. 18–19; Doc. 13 at p. 3, a pro se litigant does not have a constitutional or statutory right to appointed counsel in a civil case. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) ("A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." (citation omitted)). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a district court considers relevant factors such as the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the ability of the indigent litigant to present his or her claim. *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

Upon review of the record, the Court concludes that Saling has stated non-frivolous claims against Barnes and Askhar; further, after considering the relevant factors, the Court finds

9

that appointment of counsel at this time would benefit the Court as well as Saling. Accordingly, the Court grants Saling's motion for appointment of counsel. Doc. 19.

The Court appoints Hannah Hope, of ARMSTRONG TEASDALE, as pro bono counsel for Saling in this matter. Appointed counsel must contact Saling, and file an entry of appearance, by no later than April 19, 2023 (Saling's contact information available from the Clerk's office). Aside from any amendment as a matter of course under Fed. R. Civ. P. 15(a)(1), the Court grants Saling leave to file an amended complaint by no later than May 31, 2023.

## IV.     Conclusion

For the reasons stated above, the Court grants in part and denies in part Saling's motion for reconsideration, Doc. 14. The Court grants the motion only as to the dismissal without prejudice of Defendant Kahlid Ashkar, and the Court vacates the portion of the Court's prior Orders dismissing Ashkar. Docs. 8, 9. The Court directs the Clerk of Court to issue process or cause process to issue on Defendant Kahlid Ashkar in his individual capacity as to Saling's deliberate-indifference claim involving Ashkar's purported labeling of Saling as a "snitch." *See* Doc. 1. Ashkar shall be served by summons by the United States Marshals at the Franklin County Sheriff's Office, #1 Bruns Drive, Union, Missouri, 63084.

In light of the Court's appointment of counsel for Saling, the Court denies without prejudice Saling's [16] Motion for Request of Information, and extends to April 26, 2023 the deadline the Court previously set for Saling to provide an address at which Hunter Barnes may be served. *See* Doc. 13. Aside from any amendment as a matter of course, the Court grants Saling leave to file an amended complaint by no later than May 31, 2023.

So Ordered this 13th day of April 2023.

                                                              /s/ Stephen R. Clark  
                                                              STEPHEN R. CLARK  
                                                              CHIEF UNITED STATES DISTRICT JUDGE