UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY PHILLIP SALING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-00392 SRC |
| | ) | |
| STEVEN PELTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum and Order**

This matter is before the Court upon review, under 28 U.S.C. § 1915, of the Amended Complaint of Plaintiff Jeremy Saling, submitted by appointed counsel on May 31, 2023. Doc. 37. After reviewing the Amended Complaint for frivolousness, maliciousness, and failure to state a claim, the Court dismisses Saling's individual-capacity failure-to-protect claims against Defendants Steven Pelton, Scott Duck and Michael Delatorre, and concludes that the remainder of Saling's claims survive initial review. *See* 28 U.S.C. § 1915(e)(2)(B).

**I.      Background**

Saling was a pretrial detainee at the time of the filing of the complaint on April 4, 2022. Doc. 1. He is currently incarcerated at Ozark Correctional Center in Fordland, Missouri. He filed this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights during his incarceration at Franklin County Detention Center in Union, Missouri. In his original Complaint he named the following individuals and entities as defendants in this action: Franklin County Sheriff Steven Pelton, Captain Scott Duck, Lieutenant Michael Delatorre, Sergeant Kahild

Ashkar[1], Corporal Hunter Barnes, Deputy Taria Byrd[2], Deputy Todd Sinclair, Deputy James Cross, and the Franklin County Sheriff's Department. *Id.*

After reviewing Saling's original Complaint under 28 U.S.C. § 1915, the Court dismissed all of Saling's claims except for his individual-capacity claims against defendant Barnes. *See* Doc. 8. However, the Court granted in part Saling's motion for reconsideration, Doc. 14, only as to his individual-capacity deliberate-indifference claim against Ashkar, involving Ashkar's purported labeling of Saling as a "snitch." *See* Doc. 22 at p. 10. The Court also granted Saling's motion for appointment of counsel, Doc. 19, and granted Saling leave to file an amended complaint by no later than May 31, 2023. Doc. 22 at p. 10.

Saling, through counsel, filed an Amended Complaint on May 31, 2023. Doc. 37. Because Saling remains in forma pauperis, the Court reviews the Amended Complaint below pursuant to § 1915.

## II.     Legal Standard

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v.*

---

[1-2] At various times during this action Saling has referred to Ashkar as "Kahlid" Ashkar and "Kahild" Ashkar. Appointed counsel refers to Ashkar as "Kahlid" Ashkar in the Amended Complaint. Doc. 37. Defense counsel, in its Answer to the Amended Complaint, filed on June 14, 2023, Doc. 42, also refers to Ashkar as "Kahild" Ashkar. Similarly, Saling has referred to Byrd as "Tiara" Byrd and "Taria" Byrd. Appointed counsel refers to Byrd as "Taria" Byrd in the Amended Complaint. Doc. 37. Defense counsel, in its Answer to the Amended Complaint, filed on June 14, 2023, Doc. 42, also refers to Byrd as "Taria" Byrd. Accordingly, the Court will instruct the Clerk to update the docket to reflect the proper spelling of Ashkar's and Byrd's first names.

2

*Iqbal,* 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner,* 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

### III. The Amended Complaint

Saling, through counsel, filed an amended complaint on May 31, 2023, alleging violations of Saling's civil rights under 42 U.S.C. § 1983 during his incarceration at Franklin County Detention Center. Doc. 37. Saling also raises state-law assault-and-battery claims. He names the following individuals as defendants: Franklin County Sheriff Steven Pelton, Captain Scott Duck, Lieutenant Michael Delatorre, Sergeant Kahild Ashkar, Corporal Hunter Barnes, and

Deputy Taria Byrd.  Plaintiff sues Ashkar, Barnes and Byrd in their individual capacities only.  He sues Pelton, Duck and Delatorre in both their individual and official capacities.  Doc. 37 at pp. 2–3.

The Court accepts the following well-pleaded facts as true for purposes of review under § 1915.  Saling alleges that defendants Ashkar and Barnes violated the Fourteenth Amendment by using excessive force against him on February 2, 2022.  Saling alleges that after he overheard other inmates discussing clogging their toilets and preparing to flood the wing in response to being locked down for Covid-19 isolation, he reported the issue to Byrd.  *Id.* at ¶¶ 15–16.  Approaching Saling's cell along with Byrd, Ashkar—with his taser already out—began yelling at Saling.  *Id.* at ¶ 17.  After Saling "attempted to explain that he was trying to help and prevent the flooding," Ashkar "responded by screaming . . . that if [Saling] didn't like being locked down, he shouldn't come to jail," and that if Saling "didn't like what Ashkar had to say, 'f*ck you' and . . . take it up with the doctor."  *Id.* at ¶ 18.

After a verbal altercation, Ashkar then entered Saling's cell and pushed Saling back while screaming at him to "cuff up."  *Id.* at ¶ 19.  Over Saling's objection, Byrd and Ashkar each grabbed one of Saling's hands and placed him in a wrist lock to cause him to submit to restraints, causing "extreme pain."  *Id.* at ¶¶ 20–21.  The noise drew Deputy James Cross to the scene.  *Id.* at ¶ 22.  After Cross advised Saling to comply with the restraints required by Ashkar and Byrd, Saling complied.  *Id.* at ¶ 23.

Byrd and Ashkar then escorted Saling to "padded cell No. 3," where Ashkar screamed at him to get to the back of the cell on his knees.  *Id.* at ¶ 24.  Although Saling still had his arms restrained behind his back, he again complied.  *Id.* at 4.  Ashkar told Saling that it was "his jail," and that "when he tells [Saling] to do something he better do it if he 'knows what's

4

good for [him].'" *Id.* at ¶ 25 (second alteration in original). Ashkar then yanked Saling to his knees by his hands, which were still handcuffed behind his back, and pushed him by the back of his head. *Id.* at ¶ 26.

Hunter Barnes entered the cell at some point during this altercation, and both Barnes and Ashkar both began pushing plaintiff around the cell. *Id.* at ¶ 27. Saling asserts that he was thrown into something by Barnes and Ashkar; however, he was unsure what it was because he had closed his eyes to "protect himself." *Id.* at ¶ 28. However, before closing his eyes he saw that Byrd was still inside the cell with him. *Id.* at ¶ 29.

Saling claims that while he was still restrained, he was struck multiple times by Ashkar and Barnes, pushed around the cell, and had his face slammed into surfaces. *Id.* at ¶ 30. Saling claims he suffered multiple lacerations, a black eye, and burst blood vessels. *Id.* At some point, Saling blacked out temporarily. *Id.* at ¶ 31. When he regained consciousness, he was lying face down with multiple unnamed officers on his back and legs. *Id.* Saling—still handcuffed—saw and felt defendant Barnes forcefully pushing his head into the floor with his left hand while jamming his right thumb into the pressure point below his jaw. *Id.* at ¶ 32. Barnes continued to do so despite plaintiff's cries. *Id.*

The correctional officers finally left Saling in the cell, face down, with his legs restrained and both his hands restrained behind his back. *Id.* at ¶ 34. Saling yelled through the door to the correctional officers outside that he had been trying to help and had not done anything wrong. *Id.* at ¶ 35. Ashkar responded by telling Saling to "shut the f*ck up." *Id.* Ashkar further stated, "you're nothing but a f*cking snitch who tells on people to try to get out of trouble." *Id.* at ¶ 35. According to Saling, Ashkar yelled that he was a "snitch" in the middle of the booking area, and it could be heard by all inmates in booking and in the nearby holding cells. *Id.* Saling claims

5

that in addition to notifying Byrd earlier that day about the inmates' intent to flood the wing, he had also previously provided information to the officers at the Detention Center regarding contraband and safety and security, with the understanding that the information would be kept confidential.  *Id.* at ¶ 36.

At some point, Ashkar and Barnes reentered the cell to remove the restraints.  *Id.* at ¶ 37.  Saling asked to see the nurse for his injuries, including his face, which was bleeding.  *Id.*  Ashkar said no, and Ashkar and Barnes left the cell.  *Id.*  Later, Saling saw defendant Delatorre pass his cell, and asked to be taken to the nurse.  *Id.* at ¶ 38.  It appears he received medical treatment after this time.  *Id.* at ¶ 39.  Delatorre and Ashkar, who were present while Saling saw the nurse, repeatedly told him that it was his fault that the altercation occurred, and that he should act like it had not happened.  *Id.*  After he received treatment, he was escorted back to his cell.  *Id.*

Later in the evening, Ashkar came to Saling's cell and asked him to sign an injury report.  *Id.* at ¶ 40.  The report purportedly indicated that plaintiff had received his injuries from falling.  *Id.*  Due to what he calls the report's "inaccuracy," Saling states that he added that he was the "victim of excessive use of force" prior to signing it.  *Id.*

Saling also alleges, "[u]pon information and belief," that Deputy Todd Sinclair submitted a report related to the incident above.  *Id.* at ¶ 41.  Sinclair included in the report Ashkar's statements to Saling wherein Ashkar called him a "snitch" in the booking area in front of other inmates.  *Id.*  Sinclair advised Saling that after Sinclair submitted the report, "someone of higher rank accessed the report and revised it to cover up the incident."  *Id.*  After noticing the changes, Sinclair requested that an unnamed captain allow him back into the report so that he could modify it to reflect the original statements.  *Id.*  Sinclair then locked the report to prevent further modification.  *Id.*

6

Sinclair also apologized to Saling for what happened to him and told Saling that "'they' could normally get to [Ashkar] before he 'blows up' and something like this happens." *Id.* at ¶ 42. Sergeant Bishop also spoke to plaintiff about the incident and similarly stated that "what [Ashkar] did was not right" and that Ashkar had been "getting away with it for too long." *Id.* Saling claims that Bishop advised him to call his attorney. *Id.* Saling also alleges that two other inmates at Franklin County Detention Center told him that Ashkar had assaulted them 2019. *Id.* at ¶ 43. Both inmates indicated that they had filed reports but had not received any response. *Id.*

After the incident with Ashkar, Saling asked daily for photographs of his face to document his injuries. *Id.* at ¶ 44. Staff refused his requests until Deputy Kaune took photos almost a week later. *Id.* In the meantime, Saling had family members take screenshots of his face during daily video calls. *Id.* In response to Saling's complaints, Franklin County Detention Center reviewed the video of the altercation and found there was concerning behavior on the part of the officers involved. *Id.* at ¶ 45.

Saling had to see an optometrist because of the altercation. *Id.* at ¶ 46. He claims that the altercation left him with permanent eye damage, facial lacerations, and a black eye. *Id.* at ¶¶ 46, 52. Further, after being called a "snitch" by Ashkar, Saling was assaulted twice at the Franklin County Detention Center by other inmates. *Id.* at ¶¶ 48–49. In both attacks, inmates called him a "snitch." *Id.* at ¶ 49. After the second assault, Saling was placed in Administrative Segregation for the remainder of his time at the Detention Center. *Id.* Because Saling was transferred to Ozark Correctional Center (OCC) with other Franklin County inmates, the label of "snitch" followed him there. *Id.* at ¶ 50. He has been told at OCC that he has to pay for "protection" or suffer the consequences of not doing so. *Id.* He has been assaulted twice at OCC

7

for failing to miss a payment for protection. *Id.* at ¶ 51. As a result, he has suffered two head injuries and extreme stress. *Id.*

## IV.   Discussion

Saling brings the following claims in his six-count Amended Complaint: (1) individual-capacity excessive-force claims against Barnes and Ashkar; (2) an individual-capacity failure-to-intervene claim against Byrd; (3) an individual-capacity failure-to-protect claim against Ashkar; (4) individual- and official-capacity failure-to-train-or-supervise claims against Pelton, Duck, and Delatorre; (5) individual-capacity failure-to-protect claims against Pelton, Duck, and Delatorre; and (6) state-law assault-and-battery claims against Barnes and Ashkar. Doc. 37 at pp. 9–17. Having reviewed these claims under 28 U.S.C. § 1915(b)(2), the Court dismisses only Saling's individual-capacity failure-to-protect claims against defendants Pelton, Duck and Delatorre (count five). The Court concludes that the remainder of Saling's claims survive initial review.

### A.   Failure-to-protect claims against Ashkar, Pelton, Duck, and Delatorre

Saling asserts that Ashkar, in violation of the Fourteenth Amendment, unreasonably subjected him to a substantial risk of harm from other inmates when he labeled him a "snitch" in the booking area in front of other inmates. Doc. 37 at ¶¶ 66–75. Plaintiff claims that Pelton, Duck, and Delatorre, as "supervising officers," also failed to ensure his safety. *Id.* at ¶¶ 87–97. Thus, he also sues these defendants for failure to protect in violation of the Fourteenth Amendment, like defendant Ashkar. Saling sues all the aforementioned defendants in their individual capacities.

Prison officials must take "reasonable measures to guarantee the safety of the inmates." *Irving v. Dormire*, 519 F.3d 441, 450–51 (8th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S.

8

825, 882 (1994)). In particular, "[p]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer,* 511 U.S. at 833). "They also have a duty to protect inmates from unreasonable conditions that pose 'a substantial risk of serious harm.'" *Id.* (quoting *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007)).

In *Irving*, the Eighth Circuit upheld the district court's denial of qualified immunity to a prison guard who labeled an inmate a "snitch," holding that—"given the clear weight of authority in the circuits that ha[d] ruled on the question"—"a reasonable prison guard in [the guard]'s position would have known that to label [the inmate] a snitch would violate his constitutional right to protection from harm." 519 F.3d at 451 (citing cases). The Eighth Circuit noted that "we have previously recognized that an inmate who is considered to be a snitch is in danger of being assaulted or killed by other inmates . . . ." *Id.* (citing *Reece v. Groose*, 60 F.3d 487, 588 (8th Cir. 1995)).

Saling's allegation that Ashkar yelled in front of other inmates that Saling was a "snitch" is sufficient for his Fourteenth Amendment failure-to-protect claim to survive initial review under § 1915. The Eighth Circuit in *Irving* recognized the threat posed to an inmate when labeled a snitch. 519 F.3d at 451. The Eighth Circuit further explained this threat in *Reeves v. King*, stating that "[t]he focus of 'snitch' cases is the possibility of retaliation by other inmates." 774 F.3d 430, 433 (8th Cir. 2014). This risk is greatest when prison staff label an inmate a "snitch" in front of other inmates and when the labeled inmate has acted "in contravention to the interests of other inmates . . . ." *See id.* at 432–33.

Saling's allegations against the supervisory defendants, however, fail to establish a failure to protect. Saling asserts that because Deputy Sinclair submitted a report about Ashkar's behavior in the booking area on February 2, 2022, this report *should have been reviewed* by

9

Pelton, Duck and Delatorre, who were supervisors at the Detention Center. Thus, Saling surmises that Sinclair's report *should have* given the supervisors an obligation to take steps to protect Saling and/or to implement required safety procedures.

These allegations fail to establish personal knowledge of Ashkar's behavior on the part of defendants Pelton, Duck and Delatorre, which is required to hold those defendants liable under § 1983. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights); *see also Marsh v. Phelps Cty.,* 902 F.3d 745, 754 (8th Cir. 2018) (vicarious liability is inapplicable to § 1983 suits). "[A] supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *see also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution"). To succeed, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). Further, to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge*, 647 F.3d 841, 849 (8th Cir. 2011).

Here, Saling merely alleges that as a result of Sinclair's report, Pelton, Duck, and Delatorre "had notice" of the risk of harm to Saling. Doc. 37 at ¶ 94. Saling does not allege, for example, that defendants Pelton, Duck or Delatorre directly participated in Ashkar's

10

announcement that plaintiff was a "snitch," knew about Ashkar's announcement, or actually reviewed Sinclair's report.  This lack of first-hand knowledge of the offending acts is fatal to the claims against them in count five of the Amended Complaint.  Accordingly, while the Court concludes that Saling's individual-capacity failure-to-protect claim against Ashkar survives initial review, the Court dismisses Saling's individual-capacity failure-to-protect claims against Pelton, Duck, and Delatorre, pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B. Remaining claims

Having carefully reviewed the entirety of Saling's Amended Complaint for frivolousness, maliciousness, and failure to state a claim, the Court concludes that—other than Saling's failure-to-protect claims against Pelton, Duck, and Delatorre, addressed above—Saling's claims are not subject to dismissal under § 1915(e)(2)(B).

## V. Conclusion

Accordingly, the Court orders that the Clerk shall not issue process or cause process to issue upon the Amended Complaint only as to Saling's individual-capacity claims against defendants Pelton, Duck and Delatorre for failure to protect in violation of the Fourteenth Amendment (count five), because as to these claims the Amended Complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.  *See* 28 U.S.C. § 1915(e)(2)(B).  Saling's remaining claims survive initial review under § 1915.

The Court notes that Ashkar, Byrd, Duck and Pelton, who are represented by counsel, filed an Answer to the Amended Complaint on June 14, 2023.  The Court also notes that Barnes, who the United States Marshals served with a summons and copy of the original Complaint on May 11, 2023, has not responded to the summons, nor has counsel entered an appearance on his behalf.

Case: 4:22-cv-00392-SRC   Doc. #:  43   Filed: 06/26/23   Page: 12 of 12 PageID #: 232
The Court orders counsel for Pelton, Duck, Ashkar, and Byrd to notify the Court in writing by no later than June 28, 2023, whether she is authorized to accept service on behalf of defendants Delatorre and Barnes. The Court directs the Clerk to hold the requested summons, *see* Docs. 38 and 39, until the Court determines whether counsel is authorized to accept service.

The Court also directs the Clerk to update the docket to reflect Taria Byrd's and Kahild Ashkar's proper names. The Court certifies that an appeal from this partial dismissal shall not be taken in good faith. An Order of Partial Dismissal accompanies this Memorandum and Order.

So Ordered this 26th day of June 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE